

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-28-1995

# Securities and Exchange Commission v. Antar

Precedential or Non-Precedential:

Docket 95-5283

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"Securities and Exchange Commission v. Antar" (1995). *1995 Decisions.* Paper 296.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/296

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-5283


IN RE: SAM M. ANTAR,
                              Petition-Defendant

SECURITIES AND EXCHANGE COMMISSION,
                              Plaintiff-Respondent

                         v.

        SAM M. ANTAR, ALLEN ANTAR, and
              BENJAMIN KUSZER,
                              Defendants

                       and

    RORI ANTAR, SAM A. ANTAR, MICHELLE ANTAR,
     ADAM KUSZER, SAM KUSZER, SIMON KUSZER,
         ROSE ANTAR and SAM M. ANTAR,
                              Relief Defendants

          HON. NICHOLAS H. POLITAN,
         UNITED STATES DISTRICT JUDGE
         FOR THE DISTRICT OF NEWARK,
                              Nominal Respondent




On Appeal from the United States District Court
       for the District of New Jersey
     (D.C. Civil Action No. 93-cv-03988)



Argued August 2, 1995

Before: MANSMANN, HUTCHINSON* and ROTH, Circuit Judges

(Opinion Filed November 28, 1995)

1

*  The Honorable William D. Hutchinson participated in the oral argument and decision in the above case but died before the Opinion could be filed.

Kathryn Keneally, Esq. (Argued)
Linda Donahue, Esq.
Kostelanetz & Fink, LLP
230 Park Avenue
New York, New York 10169

       Attorneys for Petitioner-Defendant Sam M. Antar

Randall W. Quinn (Argued)
Senior Litigation Counsel
Eric Summergrad
Principal Assistant General Counsel
Catherine A. Broderick
Counsel to the Assistant General Counsel
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, DC 20549

       Attorneys for Respondent Security Exchange Commission

Gerald Krovatin, Esq.
Lowenstein, Sandler, Kohl, Fisher & Boylan
65 Livingston Avenue
Roseland, NJ 07068

       Attorney for Respondent Allen Antar

Marvin Gersten, Esq.
Gersten, Savage, Kaplowitz & Curtin
575 Lexington Avenue
New York, NY 10022

       Attorney for Respondents Benjamin Kuszer,
       Adam Kuszer, Sam Kuszer, Simon Kuszer,
       Rose Antar and Sam M. Antar

ROTH, <u>Circuit Judge</u>:

This Petition for Writ of Mandamus raises the delicate and difficult issue of judicial disqualification. Petitioner, Sam Antar, is the defendant in a civil action brought by the Securities and Exchange Commission ("SEC"). He is also the father of Eddie and Mitchell Antar, who were convicted of conspiracy to commit securities and mail fraud. On appeal, the sons' convictions were overturned and the district judge was disqualified because of a statement of purpose made by the district judge which we found to be at odds with the judge's constitutionally mandated goal of ensuring fair trial. <u>United States v. Antar</u>, 53 F.3d 568 (3d. Cir. 1995) ("<u>Antar II</u>"). In the course of the criminal proceedings, the district judge also remarked on the involvement in the conspiracy of the Antar family as a whole and of Sam Antar in particular.

The same judge who presided over the criminal proceedings now presides over the SEC action. <u>SEC v. Antar</u>, Civil No. 93-3988 (D.N.J.). Sam Antar has filed this petition seeking to have the district judge removed from that action.

We must determine what effect the earlier recusal should have on our resolution of the present petition-- particularly when that recusal is considered along with additional comments by the judge on family involvement in the conspiracy. We concluded in the criminal action that the judge

had created an appearance of prejudice toward Eddie Antar and members of the Antar family, an appearance manifested by a statement which a "reasonable observer" would interpret as indicating that the judge had the goal in the criminal trial of recovering substantial funds from Eddie and Mitchell Antar. Antar II, 53 F.3d at 577. In light of this earlier holding, considered together with the judge's further comments, we conclude that disqualification is also required in the closely related SEC proceeding against Antar family members, a proceeding which similarly seeks to recover substantial funds from the Antar family.

## I.

In our consideration of this petition for mandamus, we will focus on only a small portion of the facts surrounding the "decades-long rise and fall of an electronics retail chain called Crazy Eddie." Id. at 570. According to the government's allegations, the Crazy Eddie saga involved a sophisticated family-run conspiracy that netted its principals millions of dollars through a series of fraudulent misrepresentations and financial disclosures that duped the general public into investing heavily in the company. See id. at 570-71. Against this background, we focus on our decision in Antar II and the comments of the district judge.

In the criminal action, the government had obtained convictions against Eddie and Mitchell Antar, the two leading players in the Crazy Eddie epic. In Antar II, we overturned their convictions and remanded the case for a new trial, finding

that the district judge had improperly failed to recuse himself because of an appearance of bias.  <u>Id.</u> at 579.  The principal defendant in the SEC civil suit and the petitioner in the matter before us is Sam Antar, the father of Eddie and Mitchell Antar.[1]  The SEC charges Sam Antar with a variety of acts relating to his participation in the alleged Crazy Eddie conspiracy, making the underlying factual background indistinguishable from <u>Antar II</u>.

Sam Antar argues that this appearance of impermissible judicial bias that tainted his sons' convictions also forces the same judge's recusal from the SEC action.  The evidence of bias consists of the judge's comments on the record in the criminal proceedings.

First, Sam Antar relies on statements made by the judge in a hearing on the disposition of money posted during the criminal proceeding for Mitchell Antar's bail.  <u>United States v. Mitchell Antar</u>, Crim. No. 92-347 (D.N.J. Sept. 22, 1994) ("<u>Antar I</u>").  Following his criminal conviction, Mitchell Antar was sentenced to four years incarceration and ordered to pay $3,000,000 in restitution.  At the September 22 hearing, the district judge considered whether the trustee/receiver, overseeing the restitution, could execute on the $50,000 that had been posted as bail for Mitchell Antar.  Sam Antar opposed the trustee's efforts, claiming an ownership interest in the fund and

---

[1]	Sam Antar is joined in his petition by co-defendants Allen Antar and Benjamin Kuszer, and by eight other family members named as relief defendants.  These additional defendants raise no additional arguments or grounds for relief.  For simplicity, we will refer only to petitioner, Sam Antar.

arguing that he was not involved in the conspiracy.  The judge

declined to rule at that time on Sam's rights to the bail money.

We reproduce the relevant colloquy:

THE COURT:  . . . I realize there is a little delay on your part.  I understand there will be a delay--perhaps a delay of a month or two or six.  You may or may not prevail ultimately.  But I'm not going to pick this thing apart piece by piece or make little discrete pieces.  All part of one puzzle.  When the puzzle is together, I'll decide.

COUNSEL:  It is just frustrating to me because [Sam Antar], my client, was not part of the majority of the proceedings that has been before this Court.  We are a latecomer to the proceeding.

THE COURT:  Right now he's being charged with certain activity relative to the Crazy Eddie stock in connection with the SEC proceeding.  So he is part of it.  Moreover, there was testimony in the record, whether the statute of limitations has run or not, about his carrying millions of dollars across the sea to Israel strapped to his body, and what-have-you.  There are all sorts of things.

Sam does not come in here with a halo on his head based upon the testimony I heard in this case.  I can't close my eyes to it or put blinkers on.  Sam is not some innocent bystander.  The innocent bystanders laying out there are the public.  The public are the innocent bystanders.  Not the Antar family.  No one in the Antar family was an innocent bystander.  That is what I'm saying.

So until we unravel the portions of the puzzle, I think the discrete issue here is execution.  That is the discrete issue.  In connection with the execution, when there has been full discovery to the execution, I'll decide who gets the money and who doesn't get the money.

I'm concerned.  I don't want this money withheld from [Sam Antar] if it belongs to him.  Notwithstanding my previous comments.  I want to give everybody what they're entitled to, but we're

not playing three-card Monte on Broad Street or Broadway, New York. This is not a three-card Monte game. This is not a shell game. This is the law. This is a legal proceeding. Before we do anything, I want it all out on the table.

COUNSEL: Your Honor, I need to state for the record some of your statements concerning Petitioner having gone before this Court I'll not answer now. That date will come whenever that date is.

THE COURT: I'm telling you what the testimony was by his brother. His brother testified to that.

COUNSEL: I accept your statements your Honor.

THE COURT: I haven't made a factual finding on it. I'm telling you the Court is aware, having sat through the trial, that his brother got on the stand and testified. His nephew got on the stand and testified.

These were things which were said about your clients. Your client obviously was not a party to that proceeding. He did not have to respond to that proceeding. What I'm saying to you is this Court cannot put blinkers on and say I never heard that. I heard it. If I hear it, I know there is a lot of interrelationships between these people and a lot of money floating around. I just want to make sure when I give money back I give it back properly in accordance with all the facts. You may win. I'm not saying you'll not win.

I'm not prejudging this in the least. I'm saying fundamental fairness.

Antar I, Transcript of Proceedings at 20-23 (D.N.J. Sept. 22, 1994). Sam Antar alleges that these comments create the appearance that the judge had predetermined the scope of Sam's involvement in the Crazy Eddie saga, based on evidence heard in the prosecutions of Eddie and Mitchell Antar.

Second, Sam Antar relies on the statement made by the judge in the course of sentencing Eddie Antar: "My object in this case from day one has always been to get back to the public that which was taken from it as a result of the fraudulent activities of this defendant and others." 53 F.3d at 573. In Antar II, we held this statement dispositive in overturning the convictions of Eddie and Mitchell Antar, finding that it created the appearance of prejudice. Id. at 576. Although the statement pertained to Eddie directly, we also reversed the conviction of Mitchell Antar because

> we cannot distinguish reasonably between Eddie and Mitchell in this respect, as they were charged with offenses arising from the same circumstances. Furthermore, the judge indicated that he intended to recover what 'this defendant,' meaning Eddie, and 'others' had taken by fraudulent activities. Clearly, Mitchell was among the others.

Id. at 579. Sam Antar alleges that as Eddie and Mitchell's father, he is among the "others," making the judge's statement of purpose applicable to him as well.

## II.

We have jurisdiction over a Petition for Writ of Mandamus under the authority conferred upon us by the All Writs Act, 28 U.S.C. § 1651(a). Although we are justifiably hesitant in granting writs of mandamus, see In re School Asbestos Litig., 977 F.2d 764, 772 (3d Cir. 1992), it is the settled law of this circuit that mandamus "is a proper means for this court to review a district court's refusal to recuse from a case pursuant to 28 U.S.C. § 455(a)." Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 163 (3d Cir. 1993); see generally School Asbestos, 977 F.2d

at 774-78 (discussing relevant precedent, judicial procedure, and policy implications). Where, as here, a party has made a challenge to the judge's failure to recuse, we review the judge's decision to hear the case on an abuse of discretion standard. Antar II, 53 F.3d 568, 573 (3d Cir. 1995); United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir. 1983).

Because we seek to protect the public's confidence in the judiciary, our inquiry focuses not on whether the judge actually harbored subjective bias, but rather on whether the record, viewed objectively, reasonably supports the appearance of prejudice or bias. Antar II, 53 F.3d at 574; United States v. Bertoli, 40 F.3d 1384, 1412 (3d Cir. 1994); Alexander, 10 F.3d at 162; Haines v. Liggett Group, Inc., 975 F.2d 81, 98, (3d Cir. 1992). In making this determination, we remain ever mindful that attacks on a judge's impartiality may mask attempts to circumvent that judge's anticipated adverse decision. Alexander, 10 F.3d at 162. We are also cognizant that our rulings in these matters keenly affect the conduct of judges and parties in all disputed matters before the district courts. Bertoli, 40 F.3d at 1414; Dalfonso, 707 F.2d at 761. Accordingly, we undertake with caution the "sensitive question of assessing all the facts and circumstances in order to determine whether the failure to disqualify was an abuse of sound judicial discretion." Alexander, 10 F.3d at 162.

### III.

Sam Antar appears to invoke the broadest of the federal recusal provisions, 28 U.S.C. § 455(a). He fails to mention any

7

other statutory basis for disqualification, such as the specific conditions set forth in 28 U.S.C. § 455(b).  Moreover, we have previously determined that mandamus is <u>not</u> a proper method for us to review a challenge under the other federal recusal statute, 28 U.S.C. § 144.  <u>In re School Asbestos Litig.</u>, 977 F.2d 764, 776 (3d Cir. 1992); <u>Green v. Murphy</u>, 259 F.2d 591 (3d Cir. 1958) (<u>in banc</u>).  For these reasons, we will analyze this case under §455(a).

Section 455(a) imposes a general duty on a federal judge to recuse whenever there is an appearance of judicial partiality:  "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. §455(a). The Supreme Court most recently addressed the application of this provision in <u>Liteky v. United States</u>, ___ U.S. ___, 114 S.Ct. 1147 (1994).  We have subsequently interpreted and applied the provision in <u>Blanche Road Corp. v. Bensalem Township</u>, 57 F.3d 253 (3d. Cir.), <u>cert. denied</u>, ___ U.S. ___, 1995 WL 500513 (Oct. 10, 1995), <u>Antar II</u>, 53 F.3d 568 (3d Cir. 1995), and <u>United States v. Bertoli</u>, 40 F.3d 1384 (3d Cir. 1994).  These precedents guide our inquiry.

In <u>Liteky</u>, the Supreme Court made clear that the ultimate issue for recusal is the appearance of a wrongful or inappropriate bias or prejudice.  114 S.Ct. at 1157.  The Court stressed the importance of the extrajudicial source doctrine in assessing a judge's unfavorable disposition toward a litigant. Although the Court provided a lengthy discussion of that

doctrine's significance, the Court ultimately concluded that the extrajudicial source is not outcome determinative.  The most critical factor is not the source of the judge's prejudicial knowledge or bias, but rather the judge's "inability to render fair judgment."  Id. at 1155.

Justice Kennedy in his concurrence in Liteky stated the same principle, but from a different point of view, that of a judge abiding by his oath:  "Judges, if faithful to their oath, approach every aspect of each case with a neutral and objective disposition."  Id. at 1160.

We find that our decision in Antar II controls the application of this principle to the petition before us.  We determined in Antar II that the judge's statement as to his "object in this case from day one" revealed a goal that "was something other than what it should have been and, indeed, was improper."  53 F.3d at 576.  This indicates that the judge's purpose was at odds with his judicially mandated responsibility to provide a fair trial and impartial forum for the litigants before him.  See Haines, 975 F.2d at 98 ("The right to trial by an impartial judge 'is a basic requirement of due process.'") (quoting In re Murchison, 349 U.S. 133, 136 (1955)).  The comment therefore manifested an improper bias or prejudice against Eddie and Mitchell Antar and "others" in the family.  We reject out of hand the contention that Sam Antar might not be one of these "others."

This same improper bias or prejudice against the Antar family is relevant to the SEC proceeding.  The SEC is asking that

the Antars be required to disgorge funds gained through the securities fraud conspiracy. We conclude therefore that the district judge's comments rise to the level of "wrongful" bias and require his disqualification in the SEC proceeding. The comment we made in reversing the criminal conviction has a similar bearing to the SEC action:

> It is difficult to imagine a starker example of when opinions formed during the course of judicial proceedings display a high degree of antagonism against a criminal defendant. After all, the best way to effectuate the district judge's goal would have been to ensure that the government got as free a road as possible towards a conviction, which then would give the judge the requisite leverage to order a large amount of restitution.

53 F.3d at 576.

When the district judge announced that his goal in the criminal action was to recover for the investing public the funds which they had lost through the Antars' schemes, he also created the appearance that he had allied himself with the SEC in the civil action. The judge "display[ed] a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 114 S.Ct. at 1157; Bertoli, 40 F.3d at 1412 (quoting Liteky).

In reaching this result, we need not debate alternative characterizations of the judge's comments nor quibble over whether his opinions were based on extrajudicial or judicial sources. Taken together, his statement of purpose in Eddie Antar's sentencing hearing and his comments on Sam Antar in

Mitchell Antar's bail proceeding create an appearance of bias that meets the required thresholds in both character and degree.[2]

It suffices to say that on the facts before us, our precedents require recusal.

## IV.

For these reasons, we will grant the Petition for Writ of Mandamus, requiring that further proceedings in <u>SEC v. Antar</u>, Civil No. 93-3988, be held before a different district judge to be selected by the Chief Judge of the District of New Jersey.

---

[2] We expressly decline to consider whether, absent our determination in <u>Antar II</u> **that Judge Politan must be disqualified because of his statement at the sentencing hearing, we would draw the same conclusion from the statements in Mitchell Antar's bail proceeding alone.**

11